UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

GARY L.[1],

                                    Plaintiff,

           vs.                                                    6:18-CV-808
                                                                  (MAD/ATB)

CSX TRANSPORTATION, INC.,

                                    Defendant.

_____

APPEARANCES:                              OF COUNSEL:

JAMES D. HARTT, ESQ.,                     JAMES D. HARTT, ESQ.
ATTORNEY AT LAW
6 North Main Street
Suite 200f
Fairport, New York 14450
Attorneys for Plaintiff

NIXON, PEABODY LAW FIRM –                 SUSAN C. RONEY, ESQ.
BUFFALO OFFICE                            BENJAMIN R. DWYER, ESQ.
Key Towers at Fountain Plaza
40 Fountain Plaza
Suite 500
Buffalo, New York 14202
Attorneys for Defendant

Mae A. D'Agostino, U.S. District Judge:

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

       Plaintiff commenced this action on July 9, 2018, alleging violations of the Americans with

Disabilities Act ("ADA"), Title VII of the Civil Rights Act of 1964, and the New York State

Human Rights Law ("NYSHRL"). *See* Dkt. No. 1. Plaintiff seeks compensation for damages he

_____

[1] Because this decision contains discussion of information that was filed under seal,
Plaintiff is identified by his first name and last initial only.

suffered as a result of sexual harassment and harassment based on his mental illness by fellow

employees of Defendant.  *See* Dkt. No. 1 at 1-2.  Currently before the Court is Defendant's motion

for summary judgment.  *See* Dkt. No. 38.

## II. BACKGROUND

Plaintiff was employed as a car inspector by Defendant from 2006 until May 2017.  *See*

Dkt. No. 38-43 at ¶¶ 1-2.  According to his medical records, Plaintiff has been diagnosed with

psychosis with a delusional disorder, schizophrenia, chronic paranoia with acute exacerbations,

and adjustment disorder with mixed anxiety and depression.  *See id.* at ¶ 6.  Plaintiff was

prescribed and currently takes medication for his conditions.  *See id.* at ¶¶ 7-8.  However, there

have been periods during which Plaintiff does not take his prescribed medication.  *See id.* at ¶ 14.

Throughout his employment, Defendant provided a myriad of accommodations and support

services for Plaintiff.  *See id.* at ¶¶ 15, 16, 18, 19, 22.

Plaintiff alleges that beginning in approximately 2009, he began to experience harassment,

or "ball-busting," when his co-workers learned that his supervisor preferred Plaintiff to the other

workers.  *See id.* at ¶ 36.  Plaintiff attributes the continuation of the harassment to the fact that he

worked harder and was more productive than his co-workers.  *See id.* at ¶ 38.  In January 2014,

Plaintiff submitted a letter to Defendant's human resources department complaining about the

harassment.  *See id.* at ¶¶ 40-45.  Human resources investigated the complaint and organized a

meeting with Plaintiff, his supervisors, union representatives, and other employees to address the

alleged harassment.  *See id.* at ¶¶ 46, 49.  Following that meeting, Plaintiff reported to a treatment

provider that the work environment was improving.  *See id.* at ¶ 50.

On February 25, 2016, Plaintiff reported that a co-worker said to Plaintiff while he was

standing close behind him, "Gary, you stand behind me like you want to f\*\*k me in the pooper."

*See id.* at ¶ 53.  Following this incident, Plaintiff submitted a complaint to Defendant's Ethics

Helpline and a file was opened.  *See id.* at ¶¶ 54-55.  The complaint was investigated, both

Plaintiff and the co-worker were interviewed, and supervisors were consulted.  *See id.* at ¶¶ 56-58.

Following an investigation, Plaintiff's supervisor opted for non-disciplinary remediation, advised

the co-worker that such conduct is not tolerated in the workplace, and spoke with all employees

about respecting others and ensuring a comfortable workplace.  *See id.* at ¶ 60.  A few months

later, one of Defendant's case workers contacted Plaintiff to see if the situation had improved.  *See

id.* at ¶ 61.  Plaintiff responded that the environment had improved and things were going well.

*See id.*

　　As part of his employment, Plaintiff and other car inspectors were provided with laundry

services by Defendant.  *See id.* at ¶ 64.  On July 21, 2016, Plaintiff retrieved a pair of his pants

from the laundry facilities and found a hand-written note inside his pocket.  *See id.* at ¶ 65.  The

note states: "I want you inside me so bad, Love, T. Williams."  *See id.*  Approximately one week

later, Plaintiff submitted a complaint to the Helpline.  *See id.* at ¶ 66.  A case worker for

Defendant opened an investigation file and interviewed Plaintiff, another case worker, and the co-

worker who left the note in Plaintiff's pocket.  *See id.* at ¶¶ 68-69.  The co-worker who placed the

note in the pocket is the same co-worker who make the "pooper" statement to Plaintiff.  The co-

worker claims that he intended the note for another employee, but mistakenly put the note in

Plaintiff's pants.  *See id.* at ¶ 69.  Defendant's human resources case worker, in light of the fact

that this was the second complaint against the same employee, advised Plaintiff's supervisors to

conduct a safety briefing to review expectations for workplace behavior, the applicable rules, and

ethics policies.  *See id.* at ¶ 71 (citing Dkt. No. 38-29).  Subsequently, Plaintiff's supervisor

conducted safety briefings for approximately twenty-nine employees, including the co-worker

who left the notes, and reiterated Defendant's policies regarding workplace harassment. *See id.* at

¶¶ 72-73.  Following this incident, Plaintiff did not make another complaint to the Helpline until

May 5, 2017.  *See id.* at ¶ 76.

On approximately May 4 or 5, 2017, Plaintiff told a co-worker that other workers were not

being as productive as he was and claimed that others were sleeping during work hours.  *See id.* at

¶ 77.  Another co-worker believed that Plaintiff was speaking about him and he confronted

Plaintiff.  *See id.*  When confronted, Plaintiff denied that he made such a statement, which

prompted one of the co-workers to say "Don't be mister tough guy with me," before walking away.

*See id.*  Plaintiff claims that during this altercation, the co-worker told him to "shave your head

and take more pills."  *See id.* at ¶ 78.  Plaintiff interpreted this as being directed at his mental

illness.  *See id.*  On May 5, 2017, Plaintiff submitted a complaint to the Helpline about the

altercation.  *See id.*  at ¶ 79.  In response, an investigation file was opened and additional

information was requested from Plaintiff to facilitate the investigation of the complaint.  *See id.* at

¶¶ 80, 82.  However, after submitting the complaint, Plaintiff took a two-week vacation and never

responded to the request for additional information.  *See id.* at ¶¶ 83-84.  Defendant's case-worker

contacted Plaintiff's supervisor to investigate the incident.   *See id.* at ¶ 86.  Ultimately, the case-

worker found that Plaintiff's allegation was unsubstantiated.  *See id.* at ¶ 87.

During Plaintiff's vacation in May 2017, he began working for another company.  *See id.*

at ¶ 93.  After his vacation, Plaintiff returned to work for Defendant for approximately a week

before he was declared disabled from work by his therapist.  *See id.* at ¶ 94.  On June 12, 2017,

Plaintiff filed a complaint with the New York State Division of Human Rights.  *See id.* at ¶ 96.

On approximately April 16, 2018, Plaintiff sent Defendant a letter stating that he would not return

to work.  *See id.* at ¶ 95.  In his complaint, Plaintiff alleges that he was subjected to a hostile work

environment on the basis of his sex – arguing that he suffered sexual harassment – and his mental illness.  *See* Dkt. No. 1 at 7-8.

### III. DISCUSSION

**A.      Summary Judgment Standard**

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law.  *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted).  When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried."  *Id.* at 36-37 (quotation and other citation omitted).  Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleading.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party.  *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted).  Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court must be satisfied that the citations to evidence in the record support the movant's assertions.  *See Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

**B.      Legal Standard**

As an initial matter, the Court notes that the same standard is used when analyzing Title VII and NYSHRL claims. *See Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (citations omitted); *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003) (citation omitted). ADA hostile work environment claims are analyzed under the same frame work as Title VII, except that in order to state a claim for hostile work environment under the ADA, "[a] plaintiff must also demonstrate that [he] was subjected to the hostility because of [his disability]." *Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999); *see also Hendler v. Intelecom USA, Inc.*, 963 F. Supp. 200, 208 (E.D.N.Y. 1997) (holding that an ADA hostile work environment claim is analyzed under same framework at Title VII).

To state a hostile work environment claim in violation of Title VII, a plaintiff must set forth facts that would tend to show that the complained of conduct: "(1) 'is objectively severe or pervasive, that is, ... the conduct creates an environment that a reasonable person would find hostile or abusive'; (2) creates an environment 'that the plaintiff subjectively perceives as hostile or abusive'; and (3) 'creates such an environment because of'" a characteristic protected by Title VII. *Patane*, 508 F.3d at 113 (quoting *Gregory v. Daly*, 243 F.3d 687, 691-92 (2d Cir. 2001)); *see also Gregory*, 243 F.3d at 692 (indicating that any characteristic protected by Title VII is sufficient to satisfy the third element).

"In order to establish a hostile work environment claim under Title VII, a plaintiff must ... show that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 102 (2d Cir. 2010) (quoting *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006)). "A plaintiff must show not only that she subjectively perceived the environment to be abusive, but also that the

environment was objectively hostile and abusive." *Id.*  In assessing the hostility of a work

environment, courts examine the "totality of the circumstances." *Hayut v. State Univ. of N.Y.*, 352

F.3d 733, 745 (2d Cir. 2003).  In particular, courts "consider[ ] a variety of factors including 'the

frequency of the discriminatory conduct; its severity; whether it is physically threatening or

humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an

employee's work performance.'" *Gorzynski*, 596 F.3d at 102 (quoting *Harris v. Forklift Sys., Inc.*,

510 U.S. 17, 23 (1993)).

　　"A plaintiff need not show that [his] hostile working environment was both severe and

pervasive; only that it was sufficiently severe or sufficiently pervasive, or a sufficient combination

of these elements, to have altered [his] working conditions." *Pucino v. Verizon Wireless

Commc'ns,* 618 F.3d 112, 119 (2d Cir. 2010).  In order to be considered pervasive, a plaintiff must

show "that the incidents were 'sufficiently continuous and concerted.'" *Brennan*, 192 F.3d at 318

(quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)); *see also Robinson v.

Purcell Constr. Corp.*, 859 F. Supp. 2d 245, 255 (N.D.N.Y. 2012) (finding five "crude and

offensive" gender-based comments were "neither pervasive nor severe").  As for severity, the

"ordinary tribulations of the workplace, such as the sporadic use of abusive language,

gender-related jokes, and occasional teasing" are not objectively severe enough to establish a

hostile work environment.  *Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998).  On the

other hand, even a single incident—if it is sufficiently severe—can create a hostile work

environment if it transforms the plaintiff's workplace.  *Alfano v. Costello*, 294 F.3d 365, 374 (2d

Cir. 2002).  The incidents must be more than episodic; "[the incidents] must be sufficiently

continuous and concerted in order to be deemed pervasive." *Alfano*, 294 F.3d at 374.  Finally,

"[b]eyond demonstrating a hostile work environment, a plaintiff must show a basis for imputing the objectionable conduct to the employer." *Gorzynski*, 596 F.3d at 103 (citation omitted).

### 1. Statute of Limitations and the Continuing Violations Doctrine

It is well-established that before filing a Title VII claim in federal court, a plaintiff needs to first exhaust all of his or her administrative remedies. *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 82-83 (2d Cir. 2001) (citing 42 U.S.C. § 2000e-5(e) (2001)) (other citations omitted). In order to comply with Title VII's administrative requirements, a charge of discrimination or harassment generally must be filed with the EEOC within 180 days of the alleged unlawful employment practice or condition. *See* 42 U.S.C. § 2000e-5(e)(1). In states in which a state or local agency has overlapping authority to investigate such claims, the plaintiff's filing deadline is extended to 300 days. *See id.* Since New York has its own employment discrimination agency, a plaintiff filing discrimination or harassment charges with the EEOC must meet the 300-day filing deadline. *See Morales v. New York State Dep't of Labor*, 865 F. Supp. 2d 220, 239 (N.D.N.Y. 2012) (citing *Pikulin v. City Univ. of N.Y.*, 176 F.3d 598, 599 (2d Cir. 1999)).

Here, Plaintiff filed a complaint with the New York State Division of Human Rights on June 12, 2017. *See* Dkt. No. 38-43 at ¶ 96. In that complaint, Plaintiff alleged sexual harassment and discrimination on the basis of his sex and disability. *See* Dkt. No. 38-38. Specifically, Plaintiff included his allegations regarding the note that a co-worker put in his pocket and the "pooper" comment. *See id.* Plaintiff also alleged that these actions were part of an ongoing course of harassment. *See id.* The incident involving the "pooper" comment was in February of 2016 and the note at issue was placed in his pocket in July 2016. *See* Dkt. No. 38-43 at ¶ 96. In Plaintiff's complaint, the only incident that occurred within the limitations period was the altercation that took place in May 2017 with a separate co-worker in which Plaintiff alleges that

8

the co-worker told him to "shave your head and take more pills." *See* Dkt. No. 38-43 at ¶¶ 77-78.

Plaintiff, however, argues that the continuing violation doctrine applies from the date of Plaintiff's

constructive termination such that the Court should consider the related harassment to which he

was subjected even though the conduct falls outside the limitations period. *See* Dkt. No. 41 at 11.

Claims that fall outside of this 300-day time period are deemed time-barred and must be

dismissed. *See National R.R. Corp. v Morgan*, 536 U.S. 101, 109 (2002). Furthermore, "discrete

discriminatory acts are not actionable if time barred, even when they are related to acts alleged in

timely filed charges." *Id.* at 113. However, in a Title VII action alleging a hostile work

environment, where at least one of the alleged acts of discrimination falls within the statutory

period, the court may apply the continuing violation doctrine, wherein the court will find that

those discrete claims that would ordinarily be time-barred are sufficiently related to an overall

unlawful employment practice or policy and thus will be considered. *See Patterson v. County of*

*Oneida, N.Y.*, 375 F.3d 206, 220 (2d Cir. 2004) ("To bring a claim within the continuing violation

exception, a plaintiff must at the very least allege that one act of discrimination in the furtherance

of the ongoing policy occurred within the limitations period") (citing *Cornwell v. Robinson*, 23

F.3d 694, 703-04 (2d Cir. 1994)); *see also Lambert v. Genesee Hospital*, 10 F.3d 46, 53 (2d Cir.

1993).

In such a circumstance where the continuing violation doctrine applies, the court will then

be permitted to consider "'the entire time period of hostile work environment ... for the purposes

of determining liability.'" *Patterson*, 375 F.3d at 220 (quoting *Morgan*, 536 U.S. at 117). Where

the claim that is brought is one alleging a hostile work environment resulting from sexual

harassment, in order for the continuing violation doctrine to apply, it must be shown that "while a

harassing incident need not be overtly sex-based, there must be reason to believe that the act was

motivated by the plaintiff's sex in order for the incident to contribute to a sexually hostile work environment." *Sanderson v. New York State Elec. & Gas Corp.*, 560 Fed. Appx. 88, 92 (2d Cir. 2014) (citing *Alfano*, 294 F.3d at 378).

Here, Plaintiff has alleged that the specific incidents included in his complaint were part of ongoing harassment. *See* Dkt. No. 38-38.  Plaintiff continues to allege that he was subjected to almost daily harassment including repeated comments that Plaintiff performed oral sex acts on his supervisors to curry favor. *See* Dkt. No. 38-43 at ¶ 102; Dkt. No. 41-6 at ¶ 102.  Plaintiff also alleges that while sitting next to a co-worker, the co-worker put his hand on Plaintiff's leg and said "you can slide over, we're all alone in the dark." *See* Dkt. No. 38-43 at ¶ 118.  Plaintiff, in addition to generally alleging that he suffered harassment on a regular basis, provided examples of some of the harassment to which he was subjected. *See* Dkt. No. 38-3 at 3, 5, 10 ("I said look at what Brian's doing, putting his fingers in his mouth and saying I'm Louie's – well, this is what it sounds like with Louie's balls in my mouth), 15, 18, 21, 22 ("I went to my locker one day and Rob Matthews says, Gary, why do you lock your locker.  And I said because I don't trust anybody here. And Kieth Kasperek says it's not about trust, it's about sucking cock, you know.  So this is the kind of stuff that I put up with every day"), 26 (stating that he was called a "sexual psychopath" on a regular basis).

Although these instances are certainly offensive, they occurred outside of the limitations period.  The only alleged incidents that occurred within the limitations period are the comment that Plaintiff should shave his head and take more pills and Plaintiff's alleged constructive termination.  The comment that Plaintiff should shave his head and take more pills does not appear to be based on Plaintiff's sex.  Rather, this comment may go towards Plaintiff's claim of alleged discrimination and harassment on the basis of his mental illness.  Because this comment is

not based on Plaintiff's sex, it cannot serve as an anchor for the purposes of the continuing violation doctrine for Plaintiff's sexual harassment claim.  Plaintiff, however, argues that his constructive termination, which occurred within the limitations period, makes the continuing violation doctrine applicable.  *See* Dkt. No. 41 at 11.  Before reaching a conclusion on that issue, the Court must first determine whether Plaintiff was constructively discharged.

### 2. Constructive Discharge

"Constructive discharge is considered an adverse employment action sufficient to support a retaliation claim."  *Dall v. St. Catherine of Siena Med. Ctr.*, 966 F. Supp. 2d 167, 194 (E.D.N.Y. 2013).  "An employee is constructively discharged when his employer, rather than discharging him directly, intentionally creates a work atmosphere so intolerable that he is forced to quit involuntarily."  *Terry v. Ashcroft*, 336 F.3d 128, 151-52 (2d Cir. 2003) (citing *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 161 (2d Cir. 1998)).  Constructive discharge "requires a 'further showing' beyond what is necessary to establish a hostile work environment or retaliation claim, such that resignation qualified as a fitting response."  *Bundschuh v. Inn on the Lake Hudson Hotels, LLC*, 914 F. Supp. 2d 395, 408 (W.D.N.Y. 2012) (quoting *Pa. State Police v. Suders*, 542 U.S. 129, 134 (2004)).

"[W]orking conditions are intolerable when, viewed as a whole, they are 'so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.'"  *Terry*, 336 F.3d at 152 (quoting *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 89 (2d Cir. 1996)).  "An employee need not show that an employer acted with the specific intent to cause the employee to resign; rather, she need only show that the employer's actions were 'deliberate and not merely negligent or ineffective.'"  *Bader v. Special Metals Corp.*, 985 F. Supp. 2d 291, 309 (N.D.N.Y. 2013) (quoting *Petrosino v. Bell Atl.*, 385 F.3d 210, 229-30 (2d Cir. 2004)); *see also*

*Farren v. Shaw Envtl., Inc.*, 852 F. Supp. 2d 352, 362 (W.D.N.Y. 2012) ("If a plaintiff cannot show specific intent on the part of the employer, he or she is required to at least demonstrate that an employer['s] actions were deliberate, not merely negligent or ineffective") (citations omitted).

Plaintiff claims that he suffered harassment because of his known mental illness, leading to his constructive discharge. *See* Dkt. No. 1 at 8. In May 2017, Plaintiff took a two-week vacation, during which he began working for another company. *See* Dkt. No. 38-43 at ¶ 93. After his vacation, Plaintiff worked for Defendant for approximately one week before his therapist declared him disabled. *See id.* at ¶ 94. Finally, on April 16, 2018, Plaintiff sent Defendant a letter stating that he would not be returning to work. *See id.* at ¶ 95.

As discussed above, all of the alleged incidents of sexual harassment occurred outside the limitations period. What remains are Plaintiff's allegations that he was regularly subjected to harassment because of his mental illness. In his opposition to the motion for summary judgment, Plaintiff points to only three examples of conduct relating to his mental illness. *See* Dkt. No. 41 at 6-7. First, Plaintiff alleges that in May 2017, a co-worker told him to shave his head and "take more pills." *See id.* at 6. Second, Plaintiff argues that he was routinely called things such as a "sexual psychopath." *See id.* Finally, Plaintiff argues that his co-workers routinely told him to "jump off a bridge" or to "hang himself." *See id.* at 7.

Based upon these allegations, even when resolving all factual disputes in Plaintiff's favor, no reasonable jury could find Plaintiff's treatment was objectively intolerable such that he had no choice but to resign. Apart from Plaintiff's testimony, there is no evidence in the record to support his allegation that he was routinely called a "sexual psychopath." Further, such name-calling, although inappropriate in a working environment, are not the sort of conduct that rises to the level of a hostile work environment or support a theory of constructive discharge. Even if such

comments were repeatedly used, "by 'looking at all the circumstances,'" in addition to the

"'frequency of the discriminatory conduct,'" these comments lack the necessary "'severity,'" they

were not "'physically threatening,'" nor even particularly "'humiliating,'" but instead constituted

"'mere offensive utterance[s]'" that did not "'unreasonably interfere with [Plaintiff's] work

performance.'" *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 270-71 (2001) (quoting

*Faragher*, 524 U.S. at 787-788).

With respect to the comment that Plaintiff should "jump off a bridge" or "hang himself,"

there is no evidence to suggest that these comments were made because of Plaintiff's mental

illness. Additionally, this isolated incident occurred sometime in 2013, four years before Plaintiff

left his employment with Defendant. *See* Dkt. No. 38-43 at ¶ 105. Finally, Defendant disputes

that the "shave your head and take more pills" comment ever occurred. *See* Dkt. No. 38-44 at 14.

Regardless, even if the Court were to assume that the comment did occur, such a singular

comment would not make Plaintiff's work environment objectively intolerable. *See Fitzgerald v.*

*Henderson*, 251 F.3d 345, 358 (2d Cir. 2001) (noting that mild and isolated incidents do not make

a work environment hostile).

Plaintiff alleges that these comments occurred over the course of at least four years. *See*

Dkt. No. 38-43 at ¶ 105. Even resolving all factual disputes in Plaintiff's favor, no reasonable jury

could find that the alleged incidents occurring over the course of four years could make his

working environment objectively intolerable. Accordingly, the Court finds that no reasonable

jury could find that Plaintiff was constructively discharged because of his disability. Further, the

Court finds that the continuing violation doctrine does not apply and will only consider conduct

within the limitations period.

***3. Merits***

13

As discussed above, Plaintiff's allegations with respect to sexual harassment are time-barred.  Only Plaintiff's allegation of harassment as a result of his mental illness remains.  For the reasons previously discussed, the single alleged incident that occurred within the limitations period is not sufficient to satisfy the severe and pervasive standard.  *See Faragher*, 524 U.S. at 778 (noting that the "ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing" are not objectively severe enough to establish a hostile work environment).  Thus, alternatively, Plaintiff's claims would fail on the merits.  Finally, Plaintiff's claims would also fail because the conduct cannot be imputed to Defendant.

### 4. Imputing Conduct to Employer

In addition to establishing that he was subjected to a hostile employment environment, the plaintiff must establish that the conduct which created the hostile situation should be imputed to the employer. *Kotcher v. Rosa and Sullivan Appliance Ctr., Inc.*, 957 F.2d 59, 63 (2d Cir. 1992). "In a situation such as this, 'when the harassment is attributable to a coworker, rather than a supervisor, ... the employer will be held liable only for its own negligence.'" *Russell v. N.Y. Univ.*, 739 Fed. Appx. 28, 30 (2d Cir. 2018) (quoting *Duch v. Jakubek*, 588 F.3d 757, 762 (2d Cir. 2009)).  "[T]he plaintiff must demonstrate that the employer 'failed to provide a reasonable avenue for complaint or that it knew, or in the exercise of reasonable care should have known, about the harassment yet failed to take appropriate remedial action.'" *Summa v. Hofstra Univ.*, 708 F.3d 115, 124 (2d Cir. 2013) (quoting *Duch*, 588 F.3d at 762).  "In determining the appropriateness of an employer's response, we look to whether the response was 'immediate or timely and appropriate in light of the circumstances, particularly the level of control and legal responsibility

[the employer] has with respect to [the employee's] behavior.'" *Id.* (quoting *Crist v. Focus Homes, Inc.*, 122 F.3d 1107, 1111 (8th Cir. 1997)).

### a. Reasonable Avenue for Complaint

As to the first prong of the defense, the employer need not prove success in preventing the behavior in order to establish that it took reasonable steps to prevent and correct the conduct. *Leopold v. Baccarat, Inc.*, 239 F.3d 243, 245 (2d Cir. 2001). Although it is not dispositive, one way an employer may demonstrate that they exercised reasonable care is to show that an anti-harassment policy was in place. *Mack v. Otis Elevator Co.*, 326 F.3d 116, 128 (2d Cir. 2003), *abrogated on other grounds*, 133 S.Ct. 2434 (2013).

Here, Defendant provided its employees with a Helpline for employees to report violations of Defendant's harassment and discrimination policies. *See* Dkt. No. 38-43 at ¶ 23. Defendant's Policy Statement on harassment provides the following:

> It is CSX Transportation's policy to provide all employees with a working environment that is free of harassment by supervisors, other employees, customers, vendors, agents and other third parties. Harassment is personally offensive, lowers morale and interferes with the ability to work cooperatively. CSX Transportation has zero tolerance for sexual or any other form of harassment.
>
> **What Is Sexual Harassment?**
>
> Sexual harassment is defined as any unwelcome sexual advance, request for sexual favors or other verbal or physical conduct of a sexual nature when: (1) Submission to conduct is made, either explicitly or implicitly, a term or condition of an individual's employment; (2) Submission to or rejection of the conduct is used as a basis for employment decisions affecting an individual; or (3) The conduct has the purpose or effect of unreasonably interfering with the individual's performance or of creating an intimidating, hostile or offensive working environment.
>
> Sexual harassment can include harassment by men towards women; women towards men; men towards men; or women towards women.

...

**What Are Some Other Forms of Harassment?**

CSXT also prohibits any employee or supervisor from harassing another employee through racial or ethnic slurs or subjecting an employee to any verbal, visual, or physical abuse relating to a person's race, color, religion, sex, age, national origin, physical or mental disability, veteran's status, sexual orientation, gender identity, genetic information, or any other basis protected by applicable federal, state, or local law or engaging in any behavior that interferes with maintaining a work place free of discriminatory intimidation.

...

Complaint Procedure for Harassment or Discrimination
Any employee who has a complaint of workplace harassment against a supervisor, coworker, visitor or other person or believes he or she has been treated in an unlawful, discriminatory manner, is expected to bring the problem to the Company's attention. **If you feel that you have been harassed or discriminated against or if you have observed harassment or discrimination against another individual, you should immediately report the incident to your Human Resources Representative, or the CSX Ethics Information Toll Free Hotline at 1-800-737-1663.**

The Human Resources Department will investigate each complaint of harassment or discrimination and will take corrective and remedial actions where necessary. Employees who violate this policy will be subject to discipline up to and including dismissal. Such investigations generally will include interviews with the individual accused of harassment or discrimination and other possible witnesses. All employees are expected to cooperate in the investigation of such complaints. Complaints and investigations will remain confidential to the greatest extent possible.

Dkt. No. 38-22 at 2-3. Defendant also mandates annual computer-based training regarding its

anti-discrimination policy for all employees. *See* Dkt. No. 38-43 at ¶ 27. The record is clear that

Plaintiff was aware of Defendant's Helpline and knew that he could submit complaints about

workplace incidents to the Helpline or with human resources. *See id.* at ¶ 28. In fact, Plaintiff

submitted complaints directly to human resources and via the Helpline on multiple occasions.  *See id.* at ¶¶ 41, 54, 66, 79.  Based on this evidence, the Court finds that Defendant provided a reasonable avenue for complaints.

### b. Appropriate Remedial Response

"'The appropriateness of an employer's remedial action' in response to an employee's complaint of a co-worker's harassment 'must "be assessed from the totality of the circumstances."'"  *Russell*, 739 Fed. Appx. at 30 (quoting *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 153 (2d Cir. 2014)).  "An employer cannot be subject to a hostile work environment claim, however, if the 'employer has in good faith taken those measures which are both feasible and reasonable under the circumstances to combat [the] offensive conduct.'"  *Id.* (quoting *Snell v. Suffolk Cty.*, 782 F.2d 1094, 1104 (2d Cir. 1986)).

As previously discussed, the only alleged conduct that falls within the limitations period was the "shave your head and take more pills" comment.  Plaintiff reported this comment through the Helpline.  *See* Dkt. No. 38-43 at  ¶ 79.  Later that day, Defendant opened a file in response to Plaintiff's complaint.  *See id.* at ¶ 80.  Two days later, a case worker for Defendant responded to Plaintiff, asking for more information so that she can work on resolving his complaint.  *See id.* at ¶ 82.  However, Plaintiff never responded to the request because he went on vacation.  *See id.* at ¶¶ 83-84.  Eventually, after interviewing individuals involved and reviewing documentation, the Helpline caseworker found Plaintiff's allegations to be unfounded.  *See id.* at ¶ 87.

Although not within the limitations period, the record also reflects that Defendant responded to Plaintiffs' previous complaints by opening investigations.  *See id.* at ¶¶ 29, 46, 54, 66, 80.  In response to Plaintiff's previous complaints, Defendant held meetings with Plaintiff, his supervisors, union representatives, and other employees to address Plaintiff's complaints.  *See id.*

at ¶ 49.  Defendant even went so far as to admonish individuals who were the subject of Plaintiff's complaints and offering training for approximately thirty employees following an incident.  *See id.* at ¶¶ 60, 72-73.  Therefore, the Court finds that no reasonable jury could conclude that Defendant failed to take both feasible and reasonable measures to combat the offensive conduct.  *See Russell*, 739 Fed. Appx. at 30.  Thus, the conduct alleged cannot be imputed to Defendant.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the reasons set forth above, the Court hereby

**ORDERS** that Defendant's motion for summary judgment (Dkt. No. 38) is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated:  October 29, 2020
        Albany, New York

Mae A. D'Agostino
U.S. District Judge

18